IN THE DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | | |
|---|---|---|
| ARSENIA A. SABINAY, | ) | CIVIL CASE NO. 15-00028 |
| Plaintiff, | ) | |
| vs. | ) | |
| AON INSURANCE MICRONESIA, INC. and DOES 1-50. , | ) | **REPORT AND RECOMMENDATION**<br>re Motion to Dismiss Complaint |
| Defendants. | ) | |

This matter is before the court on a Motion to Dismiss Plaintiff's Complaint, *see* ECF No. 12, filed by Defendant Aon Insurance Micronesia (Guam), Inc. ("Aon") and subsequently referred to the below-signed Magistrate Judge . *See* ECF No. 30. Therein, Aon moved the court to dismiss the Plaintiff's Complaint on the grounds that her claims are time-barred and that she failed to exhaust her administrative remedies. On March 16, 2016, the court heard argument on the motion. Having reviewed all pertinent pleadings filed herein and heard argument from counsel, the court hereby issues this Report and Recommendation.

**BACKGROUND**

1. Procedural History

On August 27, 2015, the Plaintiff filed the instant Complaint asserting claims under Title VII of the Civil Rights Act, the Age Discrimination Employment Act ("ADEA") and the Americans with Disabilities Act ("ADA"). *See* ECF No. 1.

In lieu of an answer, Aon filed a Motion to Dismiss on October 8, 2015. *See* ECF No. 12. Citing Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Aon's motion sought a dismissal of all the Plaintiff's claims because they were either time-barred or because Plaintiff failed to exhaust

her administrative remedies.

On October 20, 2016, the Clerk's Office issued a Notice of Deficiency, noting that Aon did not file and serve a "Notice to *Pro Se* Litigant" as required by CVLR 12.[1]  *See* ECF No. 16. On October 21, 2015, Aon filed the required notice.

Plaintiff filed a response to the motion on October 29, 2015. *See* ECF No. 18. The response consisted of her declaration and some exhibits.[2] It contained no legal analysis.

On November 12, 2015, Aon filed its Reply Brief along with the declaration of David Silva III. *See* ECF Nos. 19-20.

On November 13, 2015, Plaintiff filed another response (hereinafter, the "Response") to the Motion to Dismiss. *See* ECF No. 21. This Response set forth Plaintiff's legal analysis in opposition to the motion.

On November 24, 2015, Aon filed a Motion to Disregard Plaintiff's Untimely Opposition to Motion to Dismiss. *See* ECF Nos. 24-25. Said motion requested the court not to consider the Plaintiff's Response. In the alternative, Aon requested the court consider its Sur-Reply, attached as Exhibit A to its motion.

On November 30, 2015, the parties came before the court for a Scheduling Conference. *See* Minutes, ECF No. 26. Thereafter, the court issued a Scheduling and Planning Order, setting this

---

[1] This rule provides:

> A represented party moving to dismiss or for judgment on the pleadings against a party proceeding pro se, who refers, in support of the motion, to matters outside the pleadings as described in Fed. R. Civ. P. 12(b) or 12(c), shall serve and file a separate notice using the Court's preapproved form (Civil Attachment 1) with the full text of Fed. R. Civ. P. 56 and CVLR 56 attached at the time the motion is served. If the Court rules that a motion to dismiss or for judgment on the pleadings will be treated as one for summary judgment pursuant to Fed. R. Civ. P. 56, and the movant has not previously served and filed the notice required by this rule, the movant shall amend the form notice to reflect that fact and shall serve and file the amended notice within fourteen days of the Court's ruling.

CVLR 12.

[2] This response shall hereinafter be referred to as "Plaintiff's Declaration."

matter for trial on October 25, 2016. *See* ECF No. 27.

On December 11, 2015, the Plaintiff filed a Response to the Motion to Disregard Untimely Opposition. *See* ECF No. 28.

On December 15, 2015, Aon filed a Reply to the Plaintiff's Response to the Motion to Disregard Untimely Opposition. *See* ECF No. 29.

On January 11, 2016, the Chief Judge referred Aon's two motions to the below-signed judge. *See* ECF No. 30.

On February 17, 2016, the court denied Aon's Motion to Disregard Plaintiff's Untimely Opposition but granted its alternative request to consider the Sur-Reply. *See* ECF No. 32. The court also gave the parties notice that it would consider all extrinsic evidence filed by the parties and, pursuant to Fed. R. Civ. P. 12(d), would treat Aon's Motion to Dismiss as one for summary judgment under Rule 56. *Id.* at 2. Accordingly, the court gave the parties an opportunity to present all material pertinent to the motion, including materials the Plaintiff may have attached to the Intake Questionnaire submitted to the Guam Department of Labor ("GDOL"). *Id.*

On February 24, 2016, the Plaintiff filed a Supplemental Declaration in response to the court's February 17th Order. *See* ECF No. 33.

On February 26, 2016, Aon filed its Sur-Reply. *See* ECF No. 34.[3]

On March 2, 2016, Aon filed a Concise Statement of Material Facts and a Response to Plaintiff's Supplemental Declaration. *See* ECF Nos. 37-38.

On March 14, 2016, the Plaintiff filed a Response to Sur-Reply and a Statement of Disputed Material Facts. *See* ECF Nos. 37-38.[4]

---

[3] In its February 17th Order, the court stated that it would "grant Aon's alternative request and consider the arguments raised in the Sur-Reply." Order (Feb. 17, 2016) at 1, ECF No. 32. This Sur-reply is identical to Attachment A to Aon's Memorandum in Support of Motion to Disregard Plaintiff's Untimely Opposition. *See* ECF No. 25.

[4] The Plaintiff did not have permission to file these documents.

2. <u>Factual Background</u>[5]

Plaintiff is a 55-year old female of Filipino heritage. Compl. at ¶6, ECF No. 1. Plaintiff was employed with Aon for 21 years and held various positions.[6] *Id.* at ¶7. Based on her Complaint, the following is a time line of the pertinent allegations in support of Plaintiff's claims:

| | |
|---|---|
| May 2013 | Plaintiff asserts she was suffering from "floaters, vitreous detachment and cataract problems." *Id.* at ¶8. |
| May 15, 2013 | Sherry Cruz from Human Resources and Shellie Smith, the General Manager, asked the Plaintiff to take a training session being offered. *Id.* at ¶9. Plaintiff asked that she be allowed to take the next training session because she was scheduled to have eye surgery. *Id.* at ¶¶8-9. Plaintiff claims that she was told she "was being paid twice the value of the work [she] was doing, and that maybe [she] should go on disability leave." *Id.* at ¶9. Plaintiff contends that said statement "showed discrimination based on [her] disability." *Id.* at ¶10. Plaintiff states eventually she was able to complete the training between July and September. *Id.* at ¶8. |
| June 19, 2013 | Plaintiff had surgery on her left eye. *Id.* at ¶6. She was instructed not to lift heavy objects or bend over and to avoid any activity that could add pressure on her eye. *Id.* at ¶11. |
| June 21, 2013 | Plaintiff claims Sarah Camacho forced her to alphabetize and box some inactive account folders. *Id.* at ¶12. Plaintiff asserts she reminded Ms. Camacho about the post-op restrictions, but Ms. Camacho "yelled . . . and threatened [her] with a write up for insubordination," so the Plaintiff was "left with no choice" but to "pack[] the 2 boxes of heavy folders and alphabetize the rest, causing irritation and strain to [her] eye." *Id.* |
| July 1, 2013 | Plaintiff filed a complaint under the company's procedures about the alleged race discrimination the Plaintiff experienced. *Id.* at ¶18.[7] The company concluded that no discrimination occurred, but the Plaintiff disagreed with this result. *Id.* at ¶19. Thereafter, Plaintiff asserts the harassment against her continued in retaliation for filing a complaint with the company. *Id.* at ¶20. |
| July 17, 2013 | Plaintiff had surgery on her right eye. *Id.* at ¶6. |
| March 7, 2014 | Dave Silva, Sarah Camacho and Sherry Cruz called Plaintiff into a conference room on March 7, 2014, for a "client complaint," *Id.* at ¶15. The client supposedly was "unsatisfied" with the Plaintiff's work, but Plaintiff |

---

[5] The facts set forth herein are primarily taken from the Plaintiff's Complaint.

[6] These positions included Accounting Clerk, Data Processing Clerk, Personal Lines Underwriter and Commercial Lines Underwriter. *Id.* at ¶7.

[7] A copy of the Plaintiff's Letter of Complaint is attached as Exhibit G to her Declaration. *See* ECF No. 18-2. An identical copy of this letter is attached as Exhibit N to Plaintiff's Supplemental Declaration. *See* ECF No. 33.

|   |   |
|---|---|
|   | believes said complaint was "fabricated by someone else." *Id.* Mr. Silva allegedly stated that the client complaint was due to Plaintiff's "lack of communication skills." Despite the fact that Plaintiff believed she spoke English "well," she agreed to take a training course for her communication skills. *Id.* at ¶16. Plaintiff asserts no one had complained about her communication skills or accent in the 21 years she worked for the Defendant. *Id.* at ¶17. |
| March 19, 2014 | Sarah Camacho asked the Plaintiff to provide her a list of customers and pending work folders. The Plaintiff began compiling the list as requested, but Ms. Camacho then began "bombard[ing Plaintiff] with questions and didn't give [her] an opportunity to answer." *Id.* at ¶21. After Ms. Camacho left, Plaintiff contends she was "in serious distress, shaking, feeling numb and having heart palpitations." *Id.* at ¶22. Plaintiff asserts she has a "diagnosed anxiety problem for which [she] take[s] medication, and the harsh treatment by Sarah Camacho exacerbated it." *Id.* Plaintiff then told Mr. Silva and Ms. Camacho she was leaving the office. *Id.* at ¶23. Mr. Silva called the Plaintiff at home later that day and told the Plaintiff she was a "'drama queen' and to stay home the next two days (Thursday and Friday)." *Id.* at ¶24. Plaintiff then sent a copy of her doctor's certification and prescribed medication to Mr. Silva, and he told her that she was being disciplined for insubordination. *Id.* at ¶25. Mr. Silva also allegedly said that Plaintiff "was just seeking attention by bringing up [her] medical issues." *Id.* |
| March 24, 2014 | Plaintiff returned to work and was informed just before 5:00 p.m. that she was terminated. *Id.* at ¶26. Plaintiff alleges she was replaced with a younger employee. *Id.* |

Following her termination, the Complaint and other extrinsic evidence presented indicate the Plaintiff took steps through the GDOL and the U.S. Equal Employment Opportunity Commission ("EEOC") to exhaust her administrative remedies. These steps are summarized as follows:

|   |   |
|---|---|
| March 26, 2014 | Plaintiff submitted an Intake Questionnaire to Allen Wang at GDOL. *See* Pl.'s Decl. at ¶1, ECF No. 18 and Ex. A thereto, ECF No. 18-1. Question 4 of the Intake Questionnaire asked for the basis of Plaintiff's claim of employment discrimination, and the Plaintiff selected and marked four boxes labeled "Race," "Age," "Disability" and "Retaliation." *Id.* at p.2. The Intake Questionnaire included responses to questions 5, 6 and 13 that stated "PLEASE SEE ATTACHED" or "PLEASE SEE ATTACHED FILENOTE RE: UNSATISFIED CLIENTS." *Id.* pp.2 and 4. These attachments are appended as exhibits M and N to Plaintiff's Supplemental Declaration, ECF No. 33. |
| May[8] 8, 2014 | Mr. Wang contacted Plaintiff to come to GDOL and sign the Charge of Discrimination form he prepared.[9] Pl.'s Decl. at ¶3, ECF No. 18 and Ex. B |

---

[8] Plaintiff's Declaration states this occurred on *April* 8, 2014, but the two versions of the Charge of Discrimination attached as Exhibit B to Plaintiff's Declaration reflect the month of *May*.

[9] After submitting the Intake Questionnaire, the Plaintiff states she followed up with Mr. Wang "on an almost daily basis" but he told her "that there were many others ahead of [her] in

|  |  |
|---|---|
|  | thereto, ECF No. 18-1.  Plaintiff noticed that the prepared Charge of Discrimination incorrectly noted her supervisor was "Sarah Camacho" when it should have been "Neil Narciso."  *Id.* and Ex. B at p.2, ECF No. 18-1. Mr. Wang made the change, *see* Ex. B at p.1, and Plaintiff stated that Mr. Wang "deleted the Retaliation, Race . . . and Disability discrimination categories as he felt that Age was the strongest claim, and that [Plaintiff] did not meet the qualifications for a disability claim[.]" Pl.'s Decl. at ¶3. Mr. Wang told Plaintiff "to cross out those boxes." |
| May 9, 2014 | Mr. Wang called the Plaintiff and asked her to come to the office to re-sign the Charge of Discrimination form because he "failed to delete the word 'disability'" from ¶III of the form.  Pl.'s Decl. at ¶4, ECF No. 18 and Ex. C thereto, ECF No. 18-1. Mr. Wang also made changes to the part of the form labeled "Date(s) Discrimination Took Place." *Id.* |
| May 13, 2014 | Mr. Wang contacted the Plaintiff again and asked her to come to the office to sign the Charge of Discrimination once more since he made additional changes to the "Date(s) Discrimination Took Place" section. Pl.'s Decl. at ¶5, ECF No. 18 and Ex. D[10] thereto, ECF No. 18-1. Plaintiff believed the "case had been finalized at [this] point, relying on DOL's expertise." *Id.* at ¶6. This version of the Charge of Discrimination only alleged age discrimination based on the incident wherein "Sarah Camacho instructed [the Plaintiff] to package some inactive account folders into a box[.]" *Id.* |
| May 14 & 19, 2014 | Plaintiff called GDOL and was told to wait until August 2014. |

In the months that followed, Plaintiff and Aon, working through GDOL, tried to negotiate a settlement of the alleged discrimination. *See* Pl.'s Decl. at ¶¶7-22. On April 10, 2015, Plaintiff received a letter dated April 8, 2015, from GDOL Director Maria Connelley stating that a "preliminary finding for closure has been made . . . because there was insufficient evidence to substantiate discrimination." Pl.'s Decl. at ¶23, ECF No. 18, and Ex. H thereto, ECF No. 18-2. The letter further stated that the Plaintiff had "the right to appeal the decision by requesting a petition for reconsideration" which had to be submitted in writing within 10 days from the date of the letter. *Id.*

| April 16, 2015 | The Plaintiff filed a petition for reconsideration as directed by the letter. Pl.'s Decl. at ¶23, ECF No. 18, and Ex. I thereto, ECF No. 18-2. |
|---|---|
| April 20, 2015 | The Plaintiff returned to GDOL to file an Amended Charge of Discrimination which the boxes for Race, Age and Disability discrimination marked. Pl.'s Decl. at ¶26, ECF No. 18, and Ex. J thereto, ECF No. 18-2. |

---

line and [she] would have to wait." Pl. Decl. at ¶2, ECF No. 18.

  [10] Plaintiff's Exhibit D is identical to the Charge of Discrimination filed as Exhibit A to Aon's Motion to Dismiss. *See* ECF No. 12 and Ex. A thereto.

| | | |
|---|---|---|
| April 28, 2015 | | Mr. Wang called the Plaintiff and asked her to sign a revised version because he added "some wording" to the "Particulars" section of the form. Pl.'s Decl. at ¶27, ECF No. 18, and Ex. K thereto, ECF No. 18-2. |
| June 1, 2015 | | Karrie L. Maeda, the State & Local Coordinator with the EEOC, wrote to the Plaintiff to advise her that the agency had concluded its investigation into her charges of employment discrimination and would issue her a Notice of Right to Sue. Pl.'s Decl. at ¶28, ECF No. 18, and Ex. L thereto, ECF No. 18-2. |

Plaintiff then brought the instant Complaint, asserting the following four causes of action: (1) discrimination by wrongful termination based on race and national origin; (2) discrimination based on disability by making Plaintiff work after recent eye surgery and using the Plaintiff's request to delay training because of her eye problems against her, resulting in her eventual discharge; (3) discrimination by wrongful termination based on age; and (4) discrimination by wrongful termination in retaliation for Plaintiff's complaint. The Plaintiff sought economic and general damages for severe emotional distress, as well as punitive damages.

## LEGAL STANDARD

Aon asserts that the Plaintiff's claims are time-barred and that the Plaintiff failed to exhaust her administrative remedies, thus warranting dismissal pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[11] In support of their positions, the parties submitted matters outside the pleadings. The court believed that the extrinsic evidence submitted should not be excluded since the materials were relevant and necessary for a proper resolution of the issues raised in the motion. Thus, pursuant to Rule 12(d), the court gave the parties notice that the Motion to Dismiss would be treated as one for summary judgment under Rule 56.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is not proper if material factual issues exist for trial. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 318, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

---

[11] A Rule 12(b)(1) motion seeks dismissal based on a lack of jurisdiction, and a Rule 12(b)(6) motion seeks dismissal for failure to state a claim upon which relief can be granted.

(1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.1995). In evaluating a motion for summary judgment, the district courts of the United States must draw all reasonable inferences in favor of the nonmoving party, and may neither make credibility determinations nor perform any weighing of the evidence. *See, e.g., Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554–55, (1990); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000).

The moving party has the initial burden of demonstrating that summary judgment is proper. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157. The moving party must identify the pleadings, depositions, affidavits, or other evidence which the moving party "believes demonstrates the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

The burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. To successfully rebut a properly supported motion for summary judgment, the nonmoving party "must point to some facts in the record that demonstrate a genuine issue of material fact and, with all reasonable inferences made in the plaintiff[ ]'s favor, could convince a reasonable jury to find for the plaintiff[ ]." *Reese v. Jefferson School Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000).

**DISCUSSION**

The Plaintiff's Complaint asserts claims brought under Title VII of the Civil Rights Act, the Age Discrimination in Employment Act ("ADEA") and the Americans with Disabilities Act ("ADA"). *See* Compl. at ¶1, ECF No. 1. Aon seeks dismissal of the Plaintiff's Complaint and asserts that (1) the Plaintiff's age discrimination claim is time-barred; (2) the Plaintiff's race and disability discrimination claims are also time-barred; and (3) the Plaintiff failed to exhaust her administrative remedies for the acts alleged in her Complaint that are not in either the original or amended Charges of Discrimination filed with the Guam Department of Labor or the EEOC. The Plaintiff further asserts that the dismissal should be with prejudice since no amendment can cure the untimeliness of the Plaintiff's causes of action.

///

1.   The 300-Day Limitation Period

To bring a civil action under the ADA and ADEA, the plaintiff must first file a charge of discrimination with the EEOC within 180 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e)(1) and 29 U.S.C. § 626(d)(1)(A). However, in states or localities where there is an anti-discrimination law and an agency authorized to grant or seek relief, the time frame for filing the discrimination charge with the EEOC is extended from 180 days to 300 days after the alleged unlawful employment practice occurred if "the person aggrieved has initially instituted proceedings" with the appropriate state[12] or local agency.[13]  42 U.S.C. § 2000e-5(e)(1). *See also* 29 U.S.C. § 626(d)(1)(B).  In this case, because the Plaintiff initially filed with GDOL, the 300-day limit applies.[14]

"Each discrete discriminatory act starts a new clock for filing charges[.]" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). "[D]iscriminatory acts are not actionable if time barred[.]" *Id.; see Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) (filing of a timely charge of discrimination is a statutory prerequisite to bringing suit).

2.   Whether Plaintiff's Age Discrimination Claim is Time-Barred

Aon first argues that the Plaintiff's claim for age discrimination is time barred. Aon notes that in the Plaintiff's Charge of Discrimination, filed with GDOL on May 13, 2014, only the "Age" box was marked. *See* Ex. A to Mot. to Dismiss, ECF No. 12. As noted in said version of the Charge of Discrimination, the basis for the alleged discrimination was Ms. Camacho's instructions to

---

[12] The ADA defines the term "state" to mean "each of the several States, the District of Columbia, the Commonwealth of Puerto Rico, Guam, American Samoa, the Virgin Islands of the United States, the Trust Territory of the Pacific Islands, and the Commonwealth of the Northern Mariana Islands." 42 U.S.C. § 12103(2).

[13] Such agencies are commonly referred to as fair employment practices agencies of FEP agencies.  *See* 29 C.F.R. § 1601.70(a) ("State and local fair employment practice agencies or authorities which qualify under section 706(c) of title VII and this section shall be designated as 'FEP agencies.'").

[14] Based on the Charge of Discrimination's filing date of May 13, 2014, the court may only consider acts of discrimination that occurred no later than July 17, 2013.

Plaintiff put the inactive account folders into a file box although the Plaintiff claimed she could not do so because her recent eye surgery prevented her from lifting heavy objects. Based on the allegations in the Complaint, this incident occurred on June 21, 2013, which was 326 days prior to the filing of the May 13th Charge of Discrimination. Thus, Aon asserts that Plaintiff's sole claim of age discrimination should be dismissed pursuant to 300-day limit.

Plaintiff's responds that the court may nevertheless consider a claim filed outside the statutory period if there is a pattern of "continuing violations." Here, the Plaintiff asserts that in addition to the June 21, 2013 incident, she was "subject[ed] to belittling and humiliation several times by her manager Sarah Camacho, which occurred within 300 days of Plaintiff's EEOC Charge." Pl.'s Resp. at 2, ECF No. 21. She argues that her allegations, taken together, constitute a continuing violation which form the basis for a hostile work environment claim.

Relevant to the discussion here is the case of *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), where the Supreme Court held that under the continuing violations doctrine, discriminatory conduct contributing to a hostile work environment claim, but falling outside of the statutory time period for filing a claim, may be considered by the court. *Id.* at 116-17. In determining whether a claim is timely, there is a distinction between discrete acts of discrimination or retaliation, and hostile work environment claims. A discrete act consists of an unlawful practice that "occurred" on the day it "happened," which includes, for example, "termination, failure to promote, denial of transfer, or refusal to hire." *Id.* at 114. In comparison, hostile work environment claims "involve[] repeated conduct." *Id.* at 115. Such claims "are based on the cumulative effect of individual acts," and "occur[ ] over a series of days or perhaps years[.]" *Id.* (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 117, 21 (1993)). A hostile work environment is "permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment[.]'" *Id.* at 116 (quoting *Harris*, 510 U.S. at 21).

The Supreme Court further explained:

> In determining whether an actionable hostile work environment claim exists, we look to "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive

Arsenia A. Sabinay v. Aon Insurance Micronesia, Inc. and Does 1-50, Civil Case No. 15-00028
Report and Recommendation re Motion to Dismiss Complaint
page 11 of 17

> utterance; and whether it unreasonably interferes with an employee's work performance." To assess whether a court may, for the purposes of determining liability, review all such conduct, including those acts that occur outside the filing period, we again look to the statute. It provides that a charge must be filed within 180 or 300 days "after the alleged unlawful employment practice occurred." A hostile work environment claim is composed of a series of separate acts that collectively constitute one "unlawful employment practice." 42 U.S.C. § 2000e–5(e)(1). The timely filing provision only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened. It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

*Morgan*, 536 U.S. at 117 (internal citations omitted).

Aon counters that Plaintiff failed to raise any hostile work environment allegations in any of her Charges of Discrimination she filed with GDOL. Aon contends in the first three Charges of Discrimination filed in May 2014, the Plaintiff focused solely on the June 21, 2013 incident where she alleged she was forced to perform work involving the lifting of heavy objects after her eye surgery and thereafter Ms. Camacho "yelled and belittled" her in front of co-workers. Additionally, the two Charges of Discrimination filed in April 2015 repeated these same allegations and included one other incident – that Ms. Camacho and Mr. Silva discharged Plaintiff on March 24, 2014. Aon contends that these charges "allege at best isolated incidents not sufficiently 'severe or pervasive' to constitute a hostile environment as a matter of law." Aon's Sur-reply at 2, ECF No. 34.

The court agrees with Aon. As instructed by the Supreme Court, this court must consider "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Morgan*, 536 U.S. at 117 (internal quotation marks omitted). Plaintiff does not allege that discriminatory conduct occurred frequently. Based on the allegations of the various Charges of Discrimination, the Plaintiff only asserts two incidents of alleged employment discrimination – the incident that occurred on June 21, 2013, and her termination on March 24, 2014. The conduct complained of was also not necessarily physically threatening or humiliating. Thus, the court is hard pressed to conclude that the Plaintiff's work environment is "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently

severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* at 116 (internal quotation marks omitted).

To defeat the untimeliness argument, Plaintiff's Declaration urges the court to consider her filing date to be March 26, 2014, the date she submitted the Intake Questionnaire to GDOL. *See* Pl.'s Decl. at ¶30, ECF No. 18. Plaintiff contends under "equitable doctrines" this earlier date should be considered her filing date since she should not be penalized by "the delay on the part of [GDOL] and their numerous mistakes and revision[s] of [Plaintiff's] complaint[.]" *Id.*

If the March 26, 2014 date is considered the "filing date," then the June 21, 2013 incident would fall within the 300-day statutory period.[15] Thus, the question the court must decide is whether the Intake Questionnaire is equivalent to a Charge of Discrimination. To answer this question, Aon cites to the case of *Federal Express Corp. v. Holowecki*, 552 U.S. 389 (2008). That case involved a claim that the employer violated ADEA. ADEA provided that "[n]o civil action may be commenced [by an employee] until 60 days after a charge alleging unlawful discrimination has been filed with the [EEOC]." 29 U.S.C. § 626(d). The employer moved to dismiss claiming the employee had not filed her charge with the EEOC at least 60 days before filing suit, and the employee countered that she filed a valid charge when she submitted an "Intake Questionnaire" and a signed six-page affidavit to the EEOC. *Id.* at 394. In addressing the timeliness of the suit, the Supreme Court had to decide what is a "charge" and whether the documents filed by the employee constituted a "charge." *Id.* at 395. As to the first question, the Supreme Court noted that ADEA did not define "charge." *Id.* The Supreme Court reviewed the agency's regulations and the agency's reasonable interpretations of the statute when it issues regulations.[16] *Id.* at 396-397. The Court eventually concluded that

---

[15] June 21, 2013 is 278 days prior to the March 26, 2014 filing date for the Intake Questionnaire.

[16] The Supreme Court "accept[ed] the [EEOC's] position that the regulations do not identify all necessary components of a charge. . . . [Rather], the regulations identify the procedures for filing a charge but do not state the full contents a charge document must contain." *Id.* at 397. The EEOC took the position "that the proper test for determining whether a filing is a charge is whether the filing, taken as a whole, should be construed as a request by the employee for the agency to take whatever action is necessary to vindicate her rights." *Id.* at 398.

> [i]n addition to the information required by the regulations, *i.e.*, an allegation and the name of the charged party, if a filing is to be deemed a charge it must be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and employee.

*Holowecki*, 552 U.S. at 402.

The Supreme Court then examined the employee's filing in the case.

> [The] completed intake form contained all of the information outlined in 29 CFR § 1626.8, including: the employee's name, address, and telephone number, as well as those of her employer; an allegation that she and other employees had been the victims of "age discrimination"; the number of employees who worked at the Dunedin, Florida, facility where she was stationed; and a statement indicating she had not sought the assistance of any government agency regarding this matter.
> . . .
> . . . [T]he completed questionnaire filed in December 2001 was supplemented with a detailed six-page affidavit. At the end of the last page, respondent asked the agency to "[p]lease force Federal Express to end their age discrimination plan so we can finish out our careers absent the unfairness and hostile work environment created within their application of Best Practice/High–Velocity Culture Change."

*Id.* at 404-405. The Supreme Court concluded that the employee's filing was "properly construed as a request for the agency to act."

Applying the above test for what constitutes a "charge," Aon asserts the Intake Questionnaire submitted to GDOL by the Plaintiff, along with its supporting attachments,[17] falls short of meeting the second requirement in *Holowecki* for several reasons. First, the Intake Questionnaire and attachments, even when construed in the light most favorable to Plaintiff, contains no request that the GDOL take remedial action to protect the Plaintiff's rights or otherwise settle a dispute between the Plaintiff and Aon. Aon also notes that Plaintiff did not subjectively consider the Intake Questionnaire and attachments to be a "charge" since she subsequently filed five different Charges of Discrimination, thus indicating no intent on her part to have the Intake Questionnaire function as a charge, despite her *post hac* arguments to the contrary. Aon further contends that neither the Plaintiff's Intake Questionnaire nor the attachments were verified under oath. Aon notes that the regulations require that a "charge shall be in writing and signed and shall be verified." 29 C.F.R.

---

[17] *See* Exhibits M and N to Plaintiff's Supplemental Declaration. ECF No. 33. Exhibit M is entitled "Filenote re: Unsatisfied Clients." Exhibit M appears to be notes of a meeting between Aon management and Plaintiff on March 7, 2014, and it was probably prepared by Aon – perhaps Sarah Camacho. Exhibit N is a Letter of Complaint dated July 1, 2013, and prepared by the Plaintiff for Salve Reyes.

§ 1601.9. Aon's reply brief cites to numerous cases that have held that the lack of verification on an intake questionnaire is fatal to an argument that the questionnaire constitutes a charge. *See* Reply Br. at 5-6, ECF No. 19. Aon also asserts that it would be unfair to consider the Intake Questionnaire as the functional equivalent of a charge since Aon never received notice of its submission to GDOL. Pursuant to 42 U.S.C. § 2000e-5(b), the agency is required to serve notice of a charge on an employer within 10 days after its filing. Here, Aon contends that GDOL never served it with the Intake Questionnaire and attachments because GDOL did not reasonably consider it to be a charge. *See* D. Silva Decl. at ¶¶2-3, ECF No. 20.

Finally, Aon also argues that the Intake Questionnaire should not be considered a charge because it's "principal purpose" was to "solicit information about claims of employment discrimination, determine whether the EEOC has jurisdiction over those claims, and provide charge filing counseling, as appropriate." Ex. A (Intake Questionnaire) to Pl.'s Decl. at 4, ECF No. 18-1. The Intake Questionnaire also contained the following warning:

> *If you would like to file a charge of job discrimination*, you must do so either within 90 days from the day you knew about the discrimination, or within 300 days from the day you knew about the discrimination, if the employer is located in a place where a state or local government agency enforces laws similar to the EEOC's laws. *If you do not file a charge of discrimination with the time limits, you will lose your rights*.

*Id.* (emphasis added)

The court concurs with Aon. The Intake Questionnaire and its attachments do not constitute a "charge" of discrimination. Accordingly, even giving the Plaintiff the benefit of the doubt, the earliest date a "charge" of discrimination was filed by Plaintiff was May 8, 2014. The 300-day statutory period then would cover an act of discrimination that occurred between July 12, 2013 and the filing date. In this case, the alleged act of age discrimination occurred on June 21, 2013, which is beyond the statutory period. Accordingly, the Plaintiff's age discrimination claim is time barred.

The Plaintiff asserts "equitable doctrines" should be applied to save her claim. *See* Pl.'s Decl. at ¶30, ECF No. 18. She contends she should not be blamed for the delays caused by the numerous mistakes and revisions made by GDOL in preparing the charges of discrimination. *Id.*

The Ninth Circuit described the equitable tolling doctrine as follows:

///

> Equitable tolling may be applied if, despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim. . . . [E]quitable tolling does not depend on any wrongful conduct by the defendant to prevent the plaintiff from suing. Instead it focuses on whether there was excusable delay by the plaintiff. If a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing suit until the plaintiff can gather what information he needs. However, equitable tolling does not postpone the statute of limitations until the existence of a claim is a virtual certainty.

*Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000) (internal citations and quotation marks omitted), *overruled on other grounds by Scoop-Gonzalez v. INS*, 272 F.3d 1176 (9th Cir. 2011).

In this case, the Plaintiff was aware of the existence of her claims within the limitations period. She had all the information she needed. Plaintiff even questioned Mr. Wang's failure to check the boxes for "Race" and "Disability" and she eventually accepted his explanation without challenge. There was nothing preventing her from checking the other boxes or including other facts that she believed were pertinent to her claims. Accordingly, the court finds no excusable delay by the Plaintiff because she was aware of the existence of possible claims but failed to pursue them in a timely fashion.

### 3. Whether Plaintiff's Race and Disability Claims are Time-Barred

Aon next asserts that Plaintiff's race and disability discrimination claims are also time-barred. The first time such claims were raised was in the Amended Charges of Discrimination filed with GDOL on April 20 and 28, 2015. *See* Pl.'s Decl., Exs. J and K, ECF No. 18-2. In addition to the June 21, 2013 incident, the Amended Charges of Discrimination alleged Aon discriminated against the Plaintiff based on her termination on March 24, 2014. Aon asserts this charge of discrimination based on this "discrete act" should be filed no later than 300 days from its occurrence otherwise it is time-barred.

Three hundred days after March 24, 2014 is Sunday, January 18, 2015.[18] Because the deadline fell on a Sunday, the EEOC's practice is to extend the deadline to the next working day, or, in this case, Tuesday, January 20, 2015 (since Monday, January 19th was a holiday – Martin Luther

---

[18] Aon's Motion to Dismiss incorrectly asserts the 300th day would fall on January 17, 2015.

King, Jr. Day). In this case, Plaintiff did not file the Amended Charge of Discrimination until April 2015. Thus, her race and disability discrimination claims based on her termination from employment are time barred, and the court recommends the Chief Judge dismiss said claims.

### 4. Whether Plaintiff Exhausted Administrative Remedies as to New Acts in Complaint

Aon's final argument is that the court should dismiss the remaining allegations of discriminatory acts alleged in the Complaint[19] because the Plaintiff failed to exhaust her administrative remedies as to said assertions. Specifically, Aon contends that these new allegations were never raised in the charges brought before the GDOL and the EEOC, and thus this court is without jurisdiction to consider said claims.

"The scope of a civil action alleging [employment] discrimination is limited by the charge filed with the EEOC." *Albano v. Schering–Plough Corp.*, 912 F.2d 384, 386 (9th Cir. 1990). "Incidents of discrimination not included in an EEOC charge may not be considered by a federal court unless the new claims are 'like or reasonably related to the allegations contained in the EEOC charge.'" *Green v. L.A. County Superintendent of Sch.*, 883 F.2d 1472, 1475–76 (9th Cir. 1989) (*quoting Brown v. Puget Sound Elec. Apprenticeship & Training Trust*, 732 F.2d 726, 729 (9th Cir. 1984)). "Where claims are not so closely related that agency action would be redundant, the EEOC must be afforded an opportunity to consider disputes before federal suits are initiated." *Brown*, 732 F.2d at 730.

The factors a district court may consider in determining whether a new claim is reasonably related to the allegations contained in the EEOC charge include "the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred. In addition, ... the extent that those claims are consistent with the plaintiff's original theory of the case." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002).

---

[19] These allegations include: (1) that Aon discriminated against Plaintiff on May 15, 2013, based on her disability, *see* Compl. at ¶9, ECF No. 1; (2) that Aon discriminated against her due to her race on September 5 and 24, 2013, and March 7, 2014, *id.* ¶¶13-15; and (3) that Aon retaliated against her after she filed a discrimination complaint on July 1, 2013, *id.* at ¶¶18-20.

Arsenia A. Sabinay v. Aon Insurance Micronesia, Inc. and Does 1-50, Civil Case No. 15-00028
Report and Recommendation re Motion to Dismiss Complaint

page 17 of 17

Having reviewed the new allegations in the Complaint, the court finds that said claims do not reasonably relate to the assertion of age discrimination in the Charge of Discrimination filed with GDOL and the EEOC. Some of the alleged acts of discrimination occur on dates completely different than the lone discriminatory act alleged in the Charge and involved different perpetrators. These new allegations would not have fallen within the scope of an EEOC investigation which can reasonably be expected to grow out of the Charge of Discrimination because of their factual disparity. Finally, as Aon points out, Plaintiff's new allegations would be time-barred because she did not file an EEOC charge for any of these incidents, nor did she ever file an EEOC charge alleging retaliation.

Accordingly, as to those remaining allegations of discriminatory acts alleged in the Complaint, the court finds that the Plaintiff failed to exhaust her administrative remedies as to said claims, and thus, this court is without jurisdiction to consider them.

## CONCLUSION

Based on the above analysis, the court recommends that Aon's Motion to Dismiss be granted in its entirety.



**/s/ Joaquin V.E. Manibusan, Jr.**
**U.S. Magistrate Judge**
**Dated: Aug 08, 2016**